UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

RODNEY SCOT ARMSTRONG, JR.,

                Petitioner,

v.

ADAM DOUGLAS,

                Respondent.

_____/

Case No. 1:24-cv-1201

Honorable Jane M. Beckering

## **OPINION**

This is a habeas corpus action brought by counsel on behalf of a state prisoner under 28 U.S.C. § 2254. Petitioner Rodney Scot Armstrong, Jr., is incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. Following a jury trial in the Kent County Circuit Court, Petitioner was convicted of two counts of assault with the intent to murder, in violation of Mich. Comp. Laws § 750.83, one count of felon in possession of a firearm, in violation of Mich. Comp. Laws § 750.224f, and one count of possession of a firearm during the commission of a felony (felony-firearm), in violation of Mich. Comp. Laws § 750.227b. On March 24, 2016, the trial court sentenced Petitioner to life imprisonment for the felon in possession and one of the assault with the intent to murder convictions, 40 to 60 years for the second assault with intent to murder conviction, and a consecutive 2–year term for the felony-firearm conviction.

On November 13, 2024, Petitioner, through counsel, filed his habeas corpus petition raising the following grounds for relief:

    I.      The Petitioner was denied a fair trial when the prosecutor at trial elicited false testimony from the teenaged witnesses, failed to correct the

falsehood[,] and improperly vouched for the teenaged witnesses' identification testimony.

II.    The Petitioner was denied a fair trial when the trial court prevented him from presenting a defense when the trial court precluded the Petitioner from calling a *res gestae* witness who was present at the Ros[a] Parks Circle during the fighting who heard an unidentified black male threaten to shoot someone.

III.    The Petitioner was denied a fair trial when the prosecutor committed misconduct when he showed the jury a compilation video during closing arguments that had not been admitted.

IV.    The trial court erred when it denied the Petitioner's motion for relief from judgment based on a violation of his right to effective assistance of counsel when his trial counsel (i) failed to seek an adjournment of the preliminary examination; (ii) failed to retain an identification expert and a "gang" expert; (iii) failed to conduct a thorough pretrial investigation into lay witnesses who, the Petitioner claims, would have supported his misidentification and alibi defense; and (iv) failed to object to numerous instances of prosecutorial misconduct.

V.    The jury verdict form was defective because it failed to provide for an option of "not guilty" as to each of the lesser included offenses charged based on *People v. Wade*, 283 Mich. App. 462, 771 N.W.2d 447, which held that the verdict form is defective requiring reversal when it does not give the jury the opportunity to return a general verdict of not guilty and affirmed by the Michigan Supreme Court in *People v. Erganian*, 512 Mich. 930, 994 N.W.2d 749 (2023).

VI.    The trial court erred when it denied the Petitioner's request for a new trial based in part on *res gestae* witnesses Martin Broyles and Shane Toris and their proffered sworn statement in support when the testimony is newly discovered, not merely cumulative, could not have been reasonably produced at trial, and makes a different result probable on retrial.

(Br. Supp. § 2254 Pet., ECF No. 6 (capitalization, spelling, and punctuation corrected).)

Respondent contends that Petitioner's grounds for relief are meritless.[1] (ECF No. 7.) For the

---

[1] Respondent also contends that some of Petitioner's grounds for relief are unexhausted and procedurally defaulted. (ECF No. 7.) Respondent recognizes, however, that a habeas corpus petition "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." *See* 28 U.S.C. § 2254(b)(2). Furthermore, the Supreme Court has held that federal courts are not required to address a procedural default issue before deciding against the petitioner on the merits. *Lambrix v. Singletary*, 520 U.S. 518, 525

2

following reasons, the Court concludes that Petitioner has failed to set forth a meritorious federal

ground for habeas relief and will, therefore, deny his petition for writ of habeas corpus.

<u>**Discussion**</u>

I.    **Factual Allegations**

The Michigan Court of Appeals set forth the following summary of the facts underlying

Petitioner's convictions:

> [Petitioner's] charges stem from a shooting that occurred near the Buffalo Wild
> Wings restaurant in downtown Grand Rapids at approximately midnight on the
> night of June 17 to June 18, 2014. Earlier in the day, a group of teenagers went
> downtown to hang out at a Swing dance event being held at Rosa Parks Circle. The
> group of teenagers included Jordan Forbes, Jamond Means, Shadiah McIntosh,
> Tasia Harris, and Nashay Minter. There was evidence that some of the teenagers
> fought with others at Rosa Parks Circle.
>
> Although the teenagers repeatedly denied it, there was also evidence that one or
> more members of their group clashed with [Petitioner] at Buffalo Wild Wings at
> approximately 10:30 p.m. [Petitioner] was beaten and left unconscious on the
> sidewalk outside the restaurant. Testimony showed that [Petitioner] regained
> consciousness after a few minutes and went into the restaurant to clean up. He
> refused medical treatment and refused to cooperate with an investigating officer.
> [Petitioner's] friend, Ngoc Pham, drove him home.
>
> There was cell phone and video evidence supporting the conclusion that, after being
> dropped home by Pham, [Petitioner] drove back downtown. At that time, the
> teenagers were standing near a parking lot that was adjacent to the restaurant. The
> evidence indicated that [Petitioner] circled in front of the restaurant. He then parked
> his car, walked down an alley and through the parking lot next to which the
> teenagers were standing, and fired three shots at them. Forbes was struck in the
> back and suffered a severed spine. Means was shot in the buttocks. [Petitioner] then
> fled the scene and drove out of the area. The teenaged witnesses identified the
> shooter as the man who was the victim of the beating earlier in the evening.

---

(1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it
were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved
complicated issues of state law."); *see also Overton v. Macauley*, 822 F. App'x 341, 345 (6th Cir.
2020) ("Although procedural default often appears as a preliminary question, we may decide the
merits first."); *Hudson v. Jones*, 351 F.3d 212, 215–16 (6th Cir. 2003) (citing *Lambrix*, 520 U.S.
at 525; *Nobles v. Johnson*, 127 F.3d 409, 423–24 (5th Cir. 1997); 28 U.S.C. § 2254(b)(2)). Here,
rather than conduct a lengthy inquiry into exhaustion and procedural default, judicial economy
favors proceeding directly to a discussion of the merits of Petitioner's claims.

At trial, defense counsel asserted that the teenaged witnesses fought with others earlier in the evening and that they were involved in gang activities. In light of these activities, counsel argued that others had a motive to shoot at the teenagers. He further argued that the teenagers were lying to protect each other and only identified [Petitioner] as the man who shot Means and Forbes in order to cast themselves in the role of victims. In that way, he maintained, they might prevent police officers from arresting their friends for the attack on [Petitioner]. He further stated that the other circumstantial evidence—the cell tower records and video evidence—did not demonstrate that [Petitioner] was the shooter. The jury found [Petitioner] guilty as charged.

*People v. Armstrong*, No. 332793, 2017 WL 6389895, at *1 (Mich. Ct. App. Dec. 14, 2017).

Jury selection for Petitioner's trial occurred on February 15, 2016. (Trial Tr. I, ECF No. 8-4.) Over the course of six days, the jury heard testimony from numerous witnesses, including law enforcement officials, an expert in firearm and tool mark analysis, Jordan Forbes, Jamond Means, Shadiah McIntosh, Tasia Harris, Nashay Miner, Ngoc Pham, an expert on the subject of cell phone technology, a nurse, and an acquaintance of Petitioner's. (Trial Tr. II, III, IV, V, VI, & VII, ECF Nos. 8-5, 8-6, 8-7, 8-8, 8-9, 8-10.) On February 26, 2016, after about four hours of deliberation, the jury returned a guilty verdict. (Trial Tr. VIII, ECF No. 8-11, PageID.523.) Petitioner appeared before the trial court for sentencing on March 24, 2016. (ECF No. 8-12.)

Petitioner, through counsel, appealed his convictions and sentences to the Michigan Court of Appeals, raising the following claims for relief: (1) the prosecutor committed misconduct by eliciting false testimony from the witnesses and by improperly vouching for the witnesses' identification testimony; (2) the trial court prevented Petitioner from presenting a defense by precluding witness testimony; (3) the prosecutor committed misconduct by using a compilation video during closing arguments; and (4) cumulative error. (ECF No. 8-19, PageID.813–814.) The Michigan Court of Appeals affirmed Petitioner's convictions and sentences on December 14, 2017. *Id.* On September 12, 2018, the Michigan Supreme Court denied Petitioner's application for leave to appeal. *See People v. Armstrong*, 917 N.W.2d 395 (Mich. 2018). The United States

4

Supreme Court denied Petitioner's petition for a writ of certiorari on March 18, 2019. *See Armstrong v. Michigan*, 139 S. Ct. 1329 (2019).

On November 21, 2019, Petitioner, through counsel, returned to the trial court and filed a motion for relief from judgment pursuant to Michigan Court Rule 6.502. (ECF No. 8-13.) Petitioner raised the following grounds for relief in his motion: (1) trial counsel was ineffective for failing to seek an adjournment of the preliminary examination, failing to retain experts on identification/misidentification and gangs, failing to complete pretrial investigation regarding lay witnesses who could have supported alibi and misidentifications defenses, and failing to object to prosecutorial misconduct; (2) the jury verdict form was defective because it did not provide the jury the option of returning a general "not guilty" verdict with respect to the lesser charge of assault with intent to do great bodily harm less than murder; and (3) newly discovered evidence from Martin Broyles indicated that another individual committed the shooting. (*Id.*)

In an opinion and order entered on May 12, 2022, the trial court dismissed some of Petitioner's grounds for relief and directed the prosecuting attorney to respond to the remaining grounds. (ECF No. 8-14.) Subsequently, in an opinion and order entered on June 28, 2023, the trial court denied Petitioner's Rule 6.502 motion. (ECF No. 8-18.) The Michigan Court of Appeals and Michigan Supreme Court denied Petitioner's applications for leave to appeal on January 4, 2024, and August 30, 2024, respectively. (ECF No. 8-20, PageID.917; ECF No. 8-22, PageID.1385.) This § 2254 petition followed.

## II.    AEDPA Standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated

pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a

habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotation marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was

unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id.* (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## III.    Discussion

### A.    Grounds Asserting Prosecutorial Misconduct

Petitioner raises assertions of prosecutorial misconduct in his first and third grounds for relief. For a petitioner to be entitled to habeas relief on the basis of prosecutorial misconduct, the petitioner must demonstrate that the prosecutor's improper conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). In evaluating the impact of the prosecutor's misconduct, a court should consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner. *See United States v. Young*, 470 U.S. 1, 11–12 (1985). The Supreme Court has described the *Darden* standard as "a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case determinations.'" *Parker v. Matthews*, 567 U.S. 37, 48 (2012). The *Parker* Court rejected an attempt to graft any additional requirements on the "very general" *Darden* standard.

8

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). Indeed, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (quoting *Donnelly*, 416 U.S. at, 645). Thus, in order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker*, 567 U.S. at 47 (internal quotation marks omitted).

### 1.    Ground I—Presentation of False Testimony and Vouching

#### a.    False Testimony

Petitioner first contends that he was denied a fair trial because the prosecutor "elicited false testimony from the teenaged witnesses [and] failed to correct the falsehood." (Br. Supp. § 2254 Pet., ECF No. 6, PageID.27.) Petitioner contends that the identification process included "a phot[o] array shown to the witnesses during the [investigation]," but that "[p]rior to viewing the photo array, the witnesses viewed a photograph of the petitioner posted on Facebook." (*Id.*, PageID.28.) According to Petitioner, the identification was "obviously tainted" and the witnesses' statements "were questionable because [their] stories and the certainty of their identification did not comport with the objective facts." (*Id.*) Petitioner also avers that the statements were similar and appeared to have been rehearsed. (*Id.*) Moreover, Petitioner, contends, the teenagers lied during the preliminary examination as to: (1) who was involved in the fighting at Rosa Parks Circle; (2) who was involved in the assault on Petitioner; (3) where each witness was during the assault of Petitioner; and (4) what each witness did when the assault resulted in the police being called. (*Id.*)

9

Petitioner notes that the witnesses' testimony was contradicted by the surveillance video collected by law enforcement. (*Id.*)

The Fourteenth Amendment's right to due process prohibits a state from knowingly and deliberately using perjured evidence to obtain a conviction. *See Napue v. Illinois*, 360 U.S. 264, 260 (1959). The Supreme Court has repeatedly recognized that "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.'" *Giglio v. United States*, 405 U.S. 150, 153 (1972) (quoting *Mooney v. Holohan*, 294 U.S. 103, 112 (1935)). Presentation of perjured testimony, without more, however, does not rise to the level of a constitutional violation. *See Briscoe v. LaHue*, 460 U.S. 325, 327 (1983). Rather,

> [t]he knowing use of false or perjured testimony constitutes a denial of due process if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. In order to establish prosecutorial misconduct or denial of due process, the defendants must show (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false. The burden is on the defendants to show that the testimony was actually perjured, and mere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony.

*United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989) (citations omitted).

Petitioner raised this claim on direct appeal, and the Michigan Court of Appeals rejected it, stating:

> [Petitioner] argues that, based on video evidence, it was obvious that Means, Forbes, Harris, McIntosh, and Minter lied about their role in the fights at Rosa Parks Circle and lied about their involvement in the attack on [Petitioner]. While there are apparently conflicts between the teenagers' testimony and certain events depicted in the video footage, the video evidence is not definitive proof of everything that occurred on the evening in question and it does not establish that the teenagers lied about everything that happened that night, particularly those events not captured on video. A prosecutor is under no obligation to disbelieve his or her own witnesses. *People v. Lester*, 232 Mich. App. 262, 278–279; 591 N.W.2d 267 (1998), overruled not in relevant part *People v. Chenault*, 495 Mich. 142; 845 N.W.2d 731 (2014). As such, the prosecutor could conclude that the witnesses were being truthful on many, if not all, the matters at issue.

10

To the extent that the video evidence establishes some inaccuracies or some untruths in the teenagers' testimony, it is clear that [Petitioner] is not entitled to relief because the jury was made aware of the conflict between the teenagers' testimony and the video evidence and the prosecutor did not rely on the teenagers' purported lies in obtaining a conviction. There is no indication that the prosecutor attempted to keep the video footage from defendant. *Cf. People v. Parker*, 230 Mich. App. 677, 690; 584 N.W.2d 753 (1998). Instead, the video footage in question was played at trial, the teenagers[] were examined about the conflicts between their testimony and the video footage, and, when confronted with video footage, Forbes, in particular, acknowledged that he had lied about certain facts. Thus, this is not a case where the jury was left with a false or misleading impression. *Cf. Smith*, 498 Mich. at 478. Rather, the jury had all the information necessary to assess the credibility of these witnesses and to determine whether and to what extent the witnesses were being truthful. *See People v. Perry*, 460 Mich. 55, 63; 594 N.W.2d 477 (1999) ("[A] jury is free to believe or disbelieve, in whole or in part, any of the evidence presented."). Moreover, it is evident that the prosecutor did not believe the witnesses' implausible testimony about the fights earlier in the evening, and the prosecutor did not attempt to exploit this testimony to obtain a conviction. To the contrary, the prosecutor argued to the jury that the witnesses were not being truthful about those events. The prosecutor told the jury that the evidence showed that the teenaged witnesses had been fighting at Rosa Parks Circle and "almost certainly" participated in the attack on [Petitioner]. He argued that the evidence demonstrated that Means and Forbes were "absolutely" involved. On this record, where the jury was apprised of the video evidence and the prosecutor conceded that the teenagers lied about certain facts, there is no reasonable likelihood that any false testimony by the teenagers regarding events at Rosa Parks Circle or the attack on defendant affected the judgment of the jury. Consequently, [Petitioner] is not entitled to relief on appeal. *See Aceval*, 282 Mich. App. at 389.

*Armstrong*, 2017 WL 6389895, at *2.

Here, Petitioner essentially reiterates the arguments that he raised in—and that were rejected by—both the court of appeals and the Michigan Supreme Court. Despite Petitioner's arguments, Petitioner fails to provide any evidence, much less clear and convincing evidence, to overcome the court of appeals' conclusion that the prosecutor was aware of falsities in the witnesses' testimony, presented them as witnesses regardless, and hid those falsities from the defense and jury. Rather, a review of the record indicates that the court of appeals properly pointed out that the prosecution argued that the teenagers had not been truthful about their involvement in the fighting at Rosa Parks Circle and the assault on Petitioner.

Moreover, the jury was not required to believe all of the testimony offered by the teenaged witnesses. Rather, in accordance with Michigan's model jury instructions, the jury does "not have to accept or reject everything a witness says," but is "free to believe all, none, or part of any person's testimony." *See* Mich. Crim. JI 2.6, Judging Credibility and Weight of Evidence. Thus, the jury was entitled to believe the teenagers when they testified that they had positively identified Petitioner as the shooter and disbelieve them regarding their testimony attempting to limit their involvement in the fighting at Rosa Parks Circle. Despite Petitioner's assertions, the witnesses' lies concerning their involvement in the fighting that occurred before the shooting does not equate with the prosecutor presenting false or perjured testimony, particularly when the prosecutor acknowledged that the witnesses had not been entirely truthful. Petitioner's speculations are insufficient to meet his burden on federal habeas review.

For the foregoing reasons, Petitioner has failed to demonstrate that the court of appeals' rejection of this claim is contrary to, or an unreasonable application of, clearly established federal law. Petitioner, therefore, is not entitled to relief with respect to this portion of habeas ground I.

### b.    Vouching

As part of his first ground for relief, Petitioner "submits that the prosecutor also vouched for the [credibility] of the witnesses." (Br. Supp. § 2254 Pet., ECF No. 1, PageID.29.)

The Sixth Circuit has identified two types of objectionable vouching. *See United States v. Acosta*, 924 F.3d 288, 299 (6th Cir. 2019); *Johnson v. Bell*, 525 F.3d 466, 482 (6th Cir. 2008). *But see Wogenstahl v. Mitchell*, 668 F.3d 307, 328–29 (6th Cir. 2012) (treating the two aspects of vouching as part of a single standard). The first type impermissibly places the government's prestige behind the witness to enhance his or her credibility. *See United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 2019); *United States v. Carroll*, 26 F.3d 1380, 1388–89 (6th Cir. 1994). The second type, also known as bolstering, occurs when the prosecutor invites the jury to believe there

12

is other evidence, known to the prosecutor but not introduced into evidence, justifying the prosecutor's belief in the defendant's guilt. *See Francis*, 170 F.3d at 551; *United States v. Medlin*, 353 F.2d 789, 796 (6th Cir. 1965).

Moreover, a prosecutor may not "offer [his or her] opinions as to credibility of a witness or the guilt of a defendant." *Cristini v. McKee*, 526 F.3d 888, 901 (6th Cir. 2008). As the Supreme Court has noted:

> The prosecutor's vouching for the credibility of witnesses and expressing his personal opinion concerning the guilt of the accused pose two dangers: such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.

*United States v. Young*, 470 U.S. 1, 18–19 (1985). However, not every reference to the credibility of a witness is objectionable vouching. "[A] prosecutor may ask the jury to draw reasonable inferences of credibility from the evidence presented." *Willoughby v. White*, 786 F. App'x 506, 513 (6th Cir. 2019).

On direct appeal, the Michigan Court of Appeals addressed Petitioner's vouching argument as follows:

> On appeal, [Petitioner] also argues that the prosecutor's remarks amounted to improper vouching for the eyewitnesses. Specifically, [Petitioner] asserts that the prosecutor had no way to discern when the witnesses were lying and when they were being truthful. According to [Petitioner], by arguing that the witnesses' identifications were credible even though they had lied about other things, the prosecutor implied that he had special knowledge.
>
> A prosecutor may not vouch for a witness' credibility by implying that he or she has some special knowledge that the witness is telling the truth. *People v. Bahoda*, 448 Mich. 261, 276; 531 N.W.2d 659 (1995). However, a prosecutor is free to argue from the facts that a witness should be believed. *People v. Seals*, 285 Mich. App. 1, 22; 776 N.W.2d 314 (2009). In this case, while conceding that the teenagers were not entirely truthful, the prosecutor argued that their description of the shooting and their identification of [Petitioner] was worthy of belief. The prosecutor asserted that

13

the eyewitnesses had a motive to lie about their involvement in beating [Petitioner], but that they did not have such a motive when it came to identifying him as the shooter. The prosecutor further emphasized that it was highly implausible that the teenaged eyewitnesses would conspire to frame [Petitioner]. He noted too that an officer confirmed that one of the teenagers identified [Petitioner] moments after the shooting, which made it unlikely that her identification was part of a conspiracy to frame [Petitioner]. The prosecutor also relied on independent circumstantial evidence that [Petitioner] was the shooter. He cited the cell phone and video evidence that tended to show that [Petitioner] returned to the area of Buffalo Wild Wings after being beaten by the teenagers, circled the restaurant, parked, and walked to the area of the shooting. This circumstantial evidence bolstered the eyewitnesses' identifications, and the prosecutor could rely on it when arguing credibility. There was also no indication that the prosecutor improperly placed the prestige of his office behind his arguments or claimed special knowledge. *See Bahoda*, 448 Mich. at 277 n 26. Thus, the prosecutor did not improperly vouch for their credibility, and [Petitioner] is not entitled to relief on this basis.

*Armstrong*, 2017 WL 6389895, at *3.

Here, Petitioner does not present to this Court any argument regarding this issue other than the arguments that he raised in his brief on direct appeal. Petitioner, therefore, fails to explain how the court of appeals' analysis is in error. Moreover, Petitioner does not explain how the court of appeals' analysis is contrary to, or an unreasonable application of, the general standards set forth in *Darden* or *Donnelly*.

Upon review of the record, the Court concludes that where, during closing arguments, the prosecutor noted that the teenagers' identifications of Petitioner were worthy of belief, the prosecutor tied those arguments to the evidence offered at trial or reasonable inferences from that evidence. Petitioner simply fails to point to any part of the prosecutor's argument that suggested that the prosecutor invited the jurors to believe that the teenagers had credibly identified Petitioner simply because the prosecutor believed that to be the case. Moreover, the prosecutor did not invite the jury to believe there was other evidence, known to the prosecutor but not introduced at trial, justifying a conclusion that the eyewitness identifications were reliable. Furthermore, at no time

14

did the prosecutor place the prestige of the government behind the teenagers to bolster their credibility.

The Court also notes that the trial court instructed the jury to consider only the evidence admitted at trial, and that counsel's closing arguments did not constitute evidence. (*See* Trial Tr. VIII, ECF No. 8-11, PageID.518.) A jury is presumed to follow its instructions. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000). Petitioner has not demonstrated that the remarks made by the prosecutor during closing arguments "so infected the trial with unfairness" that he was denied due process. *See Darden*, 477 U.S. at 181 (quoting *Donnelly*, 416 U.S. at 643). Petitioner, therefore, is not entitled to relief with respect to his assertion that the prosecutor improperly vouched for the witnesses' credibility.

### c.    Summary

In sum, Petitioner has failed to demonstrate that the state courts' rejection of his claim of prosecutorial misconduct premised upon the presentation of false testimony and improper vouching is contrary to, or an unreasonable application of, clearly established federal law. Petitioner, therefore, is not entitled to relief with respect to habeas ground I.

### 2.    Ground III—Use of Compilation Video

As his third ground for relief, Petitioner argues that the prosecutor committed misconduct "when he showed the jury a compilation video during closing arguments that had not been admitted." (Br. Supp. § 2254 Pet., ECF No. 6, PageID.33.) Petitioner contends that this newly created evidence "should have been barred under MRE and FRE 1006." (*Id.*)

Petitioner raised this ground on direct appeal, and the court of appeals rejected it, stating:

> Initially, we note that, although [Petitioner] discusses the admissibility of the compilation video, he also concedes that the prosecutor did not seek the admission of the compilation video and that the trial court did not admit it into evidence. Because the compilation video was not admitted, the arguments concerning the compilation's admissibility under MRE 1006 or another rule of evidence are

15

inapposite. Instead, the prosecutor used the video as a visual aid during closing and the issue on appeal is whether this use of a visual aid amounted to misconduct.

* * *

In his closing argument, the prosecutor summarized the testimony by a detective wherein the detective described the videos that the police collected from various locations in the area of the shooting. The prosecutor asked the jury to "watch the video, or all the videos combined into a compilation which shows the defendant's movements." That is, the prosecutor represented that the compilation was a video that combined the videos actually admitted into evidence and about which the detective testified. The prosecutor then played the compilation for the jury. The compilation video consists of various snippets of footage taken from cameras at various locations in the time around the shooting.[1] The individual segments are separated by the appearance of a blue screen with written text identifying the camera location for the footage that will appear next. At points, the video pauses and objects or persons in the video—such as a vehicle with a missing hubcap or a man wearing white socks—are highlighted by the appearance of a light circle. At trial, during the playback, the prosecutor pointed out how, when viewed in the selected order, the videos admitted into evidence showed the car associated with [Petitioner] moving through the area near the time of the shooting and showed that it stopped at a nearby location that enabled the driver to approach the teenaged victims. He noted that the videos appeared to show the driver, who was wearing clothing consistent with the eyewitnesses' testimony, approach the scene of the shooting at around the time of the shooting, and then flee from the scene afterward. Thus, the record shows that the prosecutor used the compilation video as a demonstrative aid as part of the prosecutor's argument about how the jury should view the videos admitted into evidence.

[Petitioner] maintains that it was error for the prosecutor to use the compilation because the compilation amounted to new evidence created by the prosecutor and thus the use of the compilation amounted to an argument based on evidence not admitted at trial. Specifically, he argues that the compiled video presented a "compelling version of events that was not obvious from the evidence admitted at trial" and that it "was slanted towards the prosecution's view of events." However, [Petitioner] does not argue that the prosecutor used videos [sic] segments in the compilation that were not actually admitted at trial. He merely states that the prosecutor assembled the videos in a compelling sequence—that is, he essentially faults the prosecutor for making a convincing argument. But, the prosecutor was free to argue the evidence and the reasonable inferences from the evidence in support of his theory of the case. *Bahoda*, 448 Mich. at 282. In assembling the videos in a particular order and highlighting certain images, the prosecutor did not offer new evidence, nor did the prosecutor distort the video images that had been admitted into evidence. Instead, the prosecutor simply used admitted video evidence during closing arguments as a demonstrative aid. We see nothing improper in the prosecutor's use of a demonstrative aid during closing arguments, and [Petitioner] has not shown plain error. *See Bennett*, 290 Mich. App. at 475.

Moreover, even if we were to conclude that the prosecutor should not have used the compilation video, [Petitioner] has not shown that the error affected his substantial rights. There is no indication the actual videos admitted at trial were unavailable for the jury's review during deliberations, and defense counsel had the opportunity to react to the compiled video and to argue that the jury should not view the video evidence in the manner suggested by the prosecutor. Further, the trial court instructed the jury that the parties' closing arguments were not evidence; the evidence, it told the jury, was the sworn testimony and the exhibits admitted at trial. Jurors are presumed to follow their instructions, and the trial court's instruction cured any minimal prejudice. *Unger*, 278 Mich. App. at 235. Thus, [Petitioner] has not shown that the prosecutor committed outcome determinative error by using the compiled video as a demonstrative aid during closing argument.

———————————————

[1] [Petitioner] has provided the compilation video on appeal, and we have reviewed it.

*Armstrong*, 2017 WL 6389895, at *5–6.

The Michigan Court of Appeals noted that this claim of prosecutorial misconduct was unpreserved because Petitioner had failed to object to the use of the video during closing arguments and reviewed the unpreserved claim "for plain error affecting substantial rights." *Id.* at *5. Under Michigan harmless error jurisprudence, unpreserved nonstructural constitutional error is reviewed under a plain error standard. *People v. Cornell*, 646 N.W.2d 127, 142–43 (Mich. 2002); *People v. Carines*, 597 N.W.2d 130, 143 (Mich. 1999). To prevail, the defendant must show "a plain error that affected substantial rights." *Carines*, 597 N.W.2d at 143. The Michigan Supreme Court assesses whether the error affected the outcome of the proceeding to determine whether the defendant has made the necessary showing. *People v. Davis*, 983 N.W.2d 325, 336–337 (Mich. 2022) (citing *United States v. Olano*, 507 U.S. 725, 734 (1993)). That is "the same kind of inquiry" the Michigan courts use to determine whether error is harmless: was it "outcome-determinative." *Id.* The Michigan Supreme Court equates "outcome determination" to "prejudice" when separating plain from harmless error, *People v. Vaughn*, 821 N.W.2d 288, 303 (Mich. 2012), and when

17

evaluating the *Strickland* standard for ineffective assistance of counsel, *People v. Harris*, 840 N.W.2d 307, 308 (Mich. 2013).

The impact of an error on the outcome of the proceedings is also the focus of federal harmless error analysis. *See, e.g.*, *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (adopting as the standard for determining whether habeas relief if appropriate "whether the . . . error 'had substantial and injurious effect or influence in determining the jury's verdict.'"); *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995) (posing the question as "Do I, the judge, think that the error substantially influenced the jury's decision?"); *Brown v. Davenport*, 596 U.S. 118, 126 (2022) (stating that "a state prisoner . . . must show that the error had a 'substantial and injurious effect or influence' on the outcome of his trial" (quoting *Brecht*, 507 U.S. at 637)). The appellate court's decision that the error was not outcome determinative is the equivalent of a determination that the error was harmless under *Brecht*. *Kyles v. Whitley*, 514 U.S. 419, 435–36 (1995).

*Brown* states that "a state court's harmless-error determination qualifies as an adjudication on the merits under AEDPA." 596 U.S. at 127. Accordingly, the Court must defer to that adjudication under § 2254(d)(1) unless the "petitioner persuades [the Court] that no 'fairminded juris[t]' could reach the state court's conclusion under [the Supreme] Court's precedents." *Id.* at 1525 (quoting *Davis v. Ayala*, 576 U.S. 257, 269 (2015)). This is a standard that is intentionally difficult to meet. *See Woods*, 575 U.S. at 316.

In his petition, Petitioner reiterates the arguments that he raised in—and that were rejected by—the court of appeals. By providing no argument suggesting that no fairminded jurist could come to the conclusion reached by the court of appeals under Supreme Court precedent, Petitioner simply fails to demonstrate that any alleged error by the prosecutor's use of the compilation video had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507

18

U.S. at 637. As noted by the court of appeals, the jury had ample opportunity to review whatever video evidence had been admitted during Petitioner's trial and to compare that video evidence to their recollection of the prosecutor's arguments during use of the compilation video.

Given Petitioner's failure to persuade the Court that no fairminded jurist could reach the conclusion arrived at by the court of appeals, the Court will defer to the court of appeals' determination. The Court's deference to the court of appeals' determination that the prosecutor's use of the compilation video, if erroneous, was not outcome determinative necessarily leads to a conclusion that Petitioner has failed to demonstrate that the court of appeals' rejection of this claim of prosecutorial misconduct is contrary to, or an unreasonable application of, clearly established federal law. Petitioner, therefore, is not entitled to relief with respect to habeas ground III.

### B.    Ground IV—Ineffective Assistance of Trial Counsel

As his fourth ground for relief, Petitioner contends that trial counsel rendered ineffective assistance in various ways. Specifically, Petitioner faults trial counsel for: (1) not seeking an adjournment of the preliminary hearing; (2) not retaining identification and gang experts; (3) failing to investigate lay witnesses who would have supported Petitioner's misidentification and alibi defenses; and (4) failing to object to numerous instances of prosecutorial misconduct. (Br. Supp. § 2254 Pet., ECF No. 6, PageID.34.)

#### 1.    Standard of Review

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the petitioner resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that

19

counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The petitioner bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the petitioner is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen*, 563 U.S. at 190; *Premo v. Moore*, 562 U.S. 115, 122 (2011). Scrutiny of counsel's performance is "highly deferential", per *Strickland*, to avoid the temptation to second guess a strategy after-the-fact and to "eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Scrutiny of the state court's scrutiny of counsel's performance must also be deferential, per 28 U.S.C. § 2254(d). In light of that double deference, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740–41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA" (citing *Harrington*, 562 U.S. at 102)).

20

Petitioner raised his claims of ineffective assistance in his Rule 6.502 motion, and the trial court addressed them in its May 12, 2022, and June 28, 2023, opinions and orders. In its May 12, 2022, opinion and order, the trial court addressed the dismissed claims of ineffective assistance under the following standard:

> Under *Strickland*, adopted as Michigan law,[] establishing ineffective assistance of counsel requires a defendant to show (1) that trial counsel's performance was objectively deficient, and (2) that the deficiencies prejudiced the defendant. 466 U.S. at 687. Prejudice means "a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confident in the outcome." *Randolph*, *supra*, at 9.

(ECF No. 8-14, PageID.675 (footnote omitted).) In its June 28, 2023 opinion and order, the trial court used the following standard:

> To establish ineffective assistance of counsel, a defendant must demonstrate that (1) his counsel's performance fell below an objective standard of reasonableness and (2) counsel's representation so prejudiced the defendant that he was deprived of a fair trial. *See People v. Pickens*, 446 Mich. 302-03; 521 N.W.2d 797 (1994). To demonstrate prejudice, a defendant must show a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *Id.* at 312.

(ECF No. 8-18, PageID.757.) Here, the trial court clearly cited *Strickland* in its first opinion. Moreover, although the trial court cited state law in its second opinion, the standard is identical to the one set forth in *Strickland*.

The trial court's application of the correct standard eliminates the possibility that the resulting decision is "contrary to" clearly established federal law. As the Supreme Court stated in *Williams v. Taylor*:

> The word "contrary" is commonly understood to mean "diametrically different," "opposite in character or nature," or "mutually opposed." Webster's Third New International Dictionary 495 (1976). The text of § 2254(d)(1) therefore suggests that the state court's decision must be substantially different from the relevant precedent of this Court. The Fourth Circuit's interpretation of the "contrary to" clause accurately reflects this textual meaning. A state-court decision will certainly

21

be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases.

*Williams*, 529 U.S. at 405. The Court went on to offer, as an example of something that is not "contrary to" clearly established federal law, the following:

> [A] run-of-the-mill state-court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s "contrary to" clause. Assume, for example, that a state-court decision on a prisoner's ineffective-assistance claim correctly identifies *Strickland* [*v. Washington*, 466 U.S. 668 (1984),] as the controlling legal authority and, applying that framework, rejects the prisoner's claim. Quite clearly, the state-court decision would be in accord with our decision in *Strickland* as to the legal prerequisites for establishing an ineffective-assistance claim, even assuming the federal court considering the prisoner's habeas application might reach a different result applying the *Strickland* framework itself. It is difficult, however, to describe such a run-of-the-mill state-court decision as "diametrically different" from, "opposite in character or nature" from, or "mutually opposed" to *Strickland*, our clearly established precedent. Although the state-court decision may be contrary to the federal court's conception of how *Strickland* ought to be applied in that particular case, the decision is not "mutually opposed" to *Strickland* itself.

*Id.* at 406. Therefore, because the trial court applied the correct standard, Petitioner can only overcome the deference afforded state court decisions if the determinations regarding Petitioner's ineffective assistance claims are unreasonable applications of *Strickland* or if the trial court's resolutions were based on unreasonable determinations of the facts. 28 U.S.C. 2254(d).

## 2.    Ground IV(i)—Failure to Request Adjournment of Preliminary Examination

Petitioner first faults trial counsel for not seeking an adjournment of the preliminary hearing. (Br. Supp. § 2254 Pet., ECF No. 6, PageID.34.) According to Petitioner, "counsel had not yet received all of the discovery needed for cross-examination of the witnesses" before the preliminary examination. (*Id.*, PageID.35.) Petitioner acknowledges that counsel filed a motion to adjourn the preliminary examination on that basis, and that counsel also sought an adjournment at the hearing, but that the request was denied. (*Id.*) The district court told counsel "it would entertain a renewed request for an adjournment if trial counsel believed [he] could not cross-examine any

particular witness due to lack of discovery, but ruled that the preliminary examination would commence." (*Id.*) According to Petitioner, counsel failed to renew the request even though "he could not effectively cross-examine the eyewitnesses regarding their examination of [Petitioner] because of the missing discovery." (*Id.*) Petitioner goes on to suggest that counsel failed to cross-examine Forbes and Means regarding their gang affiliations, if any, during the preliminary examination. (*Id.*, PageID.36.)

Petitioner raised this claim in his Rule 6.502 motion, and the trial court dismissed it in its May 12, 2022 opinion and order, stating:

> [Petitioner] complains that his lawyer was ineffective for failing to seek an adjournment of his preliminary examination because he had not received complete discovery from the prosecuting attorney. This argument fails. The record is clear that defense counsel in fact sought an adjournment for two reasons, one of which was a failure of the prosecution to provide him with complete discovery. The record shows that defense counsel was given a full and fair hearing on his motion to adjourn, including arguing that his "effective cross examination" would be "significantly benefitted if there could be more time" for discovery. Prelim Tr, pg 4. After listening to the prosecuting attorney's objection, the district judge denied the motion.

> The district judge did provide a safety valve; she stated that if defense counsel could not "effectively cross examine that witness, [defense counsel] may then request an adjournment and that would be entertained by the court." Prelim Tr, pg 9. [Petitioner] has not stated with any specificity which witnesses defense counsel could not effectively cross examine. The only hint to his reasoning is that discovery produced after the preliminary examination indicate[d] that investigating officers asked two witnesses if they were members of a street gang and the witnesses denied it. It is unclear how this information—that the police asked about gang membership and the witnesses denied being in a gang—would have helped defense counsel in any significant way.[2]

> [Petitioner] has failed to convince this court that had defense counsel . . . asked a second time for an adjournment that it would likely been granted, or if it had been granted, it would have made a difference. [Petitioner] has not suggested that a question (which is not evidence) about gang membership and a denial of gang membership (which is evidence) would have led the District Court to refuse to bind over [Petitioner].

* * *

23

> This court recognizes why some of the witness' gang involvement, if any, is relevant to his theory of the case. He argues that the underlying shooting was gang related, that the gang rivalry had nothing to do with him, and that someone else (a rival gang member) shot the two victims. But [Petitioner] has merely suggested that, at best, the magistrate would have heard a conflict of evidence. Certainly, [Petitioner] has not stated with specificity why the results of the preliminary examination would likely have been different.
>
> _____
>
> [2] One witness specifically mentioned in [Petitioner's] brief, Jamond Means, denied being in a gang during his trial. *See* Trial Tr, vol IV, pg 59.

(ECF No. 8-14, PageID.673–674.)

As set forth *supra*, in his § 2254 petition, Petitioner merely reiterates the arguments he raised in his Rule 6.502 motion and fails to explain how the trial court's decision was contrary to, or an unreasonable application of, *Strickland*. "A preliminary hearing is ordinarily a much less searching exploration into the merits of a case than a trial, simply because its function is the more limited one of determining whether probable cause exists to hold the accused for trial." *Barber v. Page*, 390 U.S. 719, 725 (1968). Petitioner fails to explain, and the Court fails to discern, how adjournment of the preliminary hearing so that trial counsel could question some of the prosecution's witnesses regarding their alleged gang membership would have led to the district court deciding to not bind over Petitioner on the charges. Instead, as the trial court recognized, a district court may not decline to bind over a defendant where there is a conflict of evidence, as that question should be left for a jury to decide. (*Id.*, PageID.674.) Accordingly, for the reasons set forth above, Petitioner is not entitled to relief with respect to this assertion of ineffective assistance of trial counsel.

### 3.    Ground IV(ii)—Failure to Retain Experts

Petitioner next faults trial counsel for failing to retain "an identification expert and a 'gang' expert." (Br. Supp. § 2254 Pet., ECF No. 6, PageID.34.) In his petition, Petitioner suggests that a

photograph of Jamond Means, Tasia Harris, and Nashay Minter that was taken before the "critical events" show all three of them "throwing up" gang signs, and that Jordan Forbes' sister told police that the shooting was gang-related. (*Id.*, PageID.37.) Petitioner argues further an identification expert could have been helpful because, according to Petitioner, the witnesses' later identification of Petitioner was tainted by the fact that they had seen a group photograph of the Ruff Riders motorcycle group, of which Petitioner was a member, on Facebook, before being shown the photo array by law enforcement. (*Id.*, PageID.40.)

Petitioner raised this claim in his Rule 6.502 motion, and the trial court rejected it in its June 28, 2023 opinion and order, stating:

> [Petitioner] next argues that his trial counsel was ineffective for failing to call a false identification expert and/or gang expert. In his brief, [Petitioner] acknowledges that he suggested to his trial counsel that a "gang expert" should be called. He also acknowledges that he and trial counsel spoke about an "ID expert," but that trial counsel explained to him that such an expert was not needed. In other words, trial counsel was aware of the possibility of such expert witnesses but declined to utilize them.

> Such is a matter of trial strategy. *Davis*, 205 Mich. App. at 368. According to the Michigan Supreme Court, "the inquiry is not whether a defendant's case might conceivably have been advanced by alternate means . . . [but to] determine whether counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment and that the deficient performance prejudiced the defense." *People v. LeBlanc*, 465, 582-83; 640 N.W.2d 246 (2000) (quotation omitted). The Court finds no error in this strategy. Trial counsel's decision to decline to call experts does not fall below an objective standard of reasonableness as set forth in *Strickland*.

(ECF No. 8-18, PageID.757–758.)

The trial court's determination tracks with clearly established federal law. The Supreme Court has recognized that "[t]he selection of an expert witness is a paradigmatic example of the type of 'strategic choic[e]' that, when made 'after a thorough investigation of [the] law and facts,' is 'virtually unchallengeable.'" *Hinton v. Alabama*, 571 U.S. 263, 275 (2014) (quoting *Strickland*, 466 U.S. at 690). Here, other than Petitioner's speculation, there is no record evidence suggesting

that Petitioner's counsel did not investigate the possibility of calling expert witnesses, particularly a "gang" expert, to testify at trial. Absent such support, Petitioner cannot overcome the presumption that counsel's actions fell within "the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

Moreover, Petitioner fails to provide any evidence that such experts were even available to testify on his behalf. "A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.3d 643, 650 (7th Cir. 1991) (footnote omitted); *see also Lagrone v. Parris*, No. 23-5177, 2023 WL 5623279, at *4 (6th Cir. Aug. 7, 2023) ("Lagrone did not identify an expert his trial counsel could have called or indicate what an expert could have testified that would have been relevant to his defense. The speculative impact of expert testimony is not enough to prove prejudice under *Strickland*."); *Pillette v. Berghuis*, 408 F. App'x 873, 887 (6th Cir. 2010) (stating that "[t]he salient point is that nobody knows what she would have said. Speculation cannot suffice to establish the requisite prejudice."). In any event, Petitioner also fails to demonstrate that, given the overwhelming evidence against him, testimony from either an "identification" or a "gang" expert would have altered the outcome of his trial in any way. Petitioner, therefore, is not entitled to relief with respect to this assertion of ineffective assistance of trial counsel.

### 4.    Ground IV(iii)—Failing to Investigate Lay Witnesses

Next, Petitioner contends that trial counsel failed to investigate lay witnesses who "would have supported [Petitioner's] misidentification and alibi defense." (Br. Supp. § 2254 Pet., ECF No. 6, PageID.34.) According to Petitioner, trial counsel failed to "interview half the people who [P]etitioner identified as potentially having helpful information." (*Id.*, PageID.44.) Petitioner names Nashay Minter and Tasia Harris as potential witnesses. (*Id.*) He mentions that Ms. Minter originally told detectives that "she and the other witnesses were unable to identify the shooter

26

because his hat was pulled down over his face and it was dark." (*Id.*) Moreover, Harris "told the police she was not in a position to see the shooter because Mr. Means, who never had a chance to turn around, was obstructing her view, and when she 'heard gunshots [she] blacked out.'" (*Id.*)

Petitioner also mentions that he met Jamond Means' father, Jamond Means, Sr., while in jail, and that Means Sr. told Petitioner that his son had told him that "he and his friends never saw the shooter," and that his cousin "Emo" had information suggesting that Petitioner did not shoot the teenagers. (*Id.*) Moreover, Petitioner contends that his "jail neighbor," Shane Toris, "told him that he had overheard the conversation with Means Sr. and would be willing to testify." (*Id.*, PageID.45.) Petitioner goes on to mention that Erin Forbes told the police that her brother, Jordan Forbes, was a member of the Bemis Street Gang, but that counsel "neither interviewed her nor subpoenaed her for trial." (*Id.*)

Petitioner also contends that counsel should have called Means' mother, Alisha Whitehead, because the Whiteheads had "done research on Facebook and circulated photos of [Petitioner] and his motorcycle group to the witnesses." (*Id.*) Petitioner suggests that Alisha Whitehead "told police that one of her children's fathers was a barber at 'Wealthy Cuts,'" and that the father had "overheard people in the shop say that Mr. 'Emo' Moore shot Alisha's son and his friends." (*Id.*) Petitioner also suggests that Jordan Forbes' uncle, Rashawn Burton, was "the only true eyewitness to the shooting." (*Id.*, PageID.46.)

Petitioner raised this claim in his Rule 6.502 motion, and the trial court rejected it in its June 28, 2023 opinion and order, stating:

> In this case, [Petitioner] has not demonstrated that trial counsel's decision not to call certain witnesses deprived him of a substantial defense. [Petitioner] argues that "[a]ttorney Stanley's failure to investigate the need for witnesses . . . was not reasonable professional judgment nor the basis of a sound trial strategy because of the inadequate investigation and failure to "'pursue all leads . . .'" citing *Grant*, 470 Mich. at 486–87. However, unlike *Grant*, in this case the proffered witnesses'

respective testimony was in furtherance of a defense strategy that trial counsel was already employing at trial, namely that [Petitioner] was misidentified. [Petitioner] asserts that these additional witnesses would have provided helpful testimony to his defense, but he does not sufficiently explain how this overcomes the presumption set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). In addition, this case was not, as [Petitioner] claims, "founded wholly on the eyewitness statements implicating him." Rather, there is additional evidence that was used by the People to convict [Petitioner]: cell phone and video evidence, which supported the conclusion that, after being dropped home by his friend, [Petitioner] drove back downtown. In sum, trial counsel's failure to conduct a more thorough investigation into these witnesses and call them at trial does not fall below an objective standard of reasonableness as set forth in *Strickland*.

(ECF No. 8-18, PageID.757 (record citations omitted).)

Petitioner offers no evidence, much less clear and convincing evidence, to overcome the presumption of correctness afforded to the trial court's factual determinations. Notably, Petitioner provided only an affidavit from Shane Toris with his Rule 6.502 motion and did not provide affidavits from any of his other putative witnesses. As set forth above, Toris offered to testify about a conversation he overheard between Petitioner and Means Sr. However, any such testimony from Toris would certainly have been inadmissible as hearsay, as Petitioner would have wanted to offer it for the truth of the matter asserted. Notably, Petitioner offers no evidence that any of these individuals were even available to testimony at his trial, and he offers nothing but his own assertions to support a conclusion that counsel's failure to present their testimony resulted in prejudice to his defense. *See Tinsley v. Million*, 399 F.3d 796, 810 (6th Cir. 2005) (affirming denial of an ineffective assistance claim based on counsel's failure to call witnesses where a petitioner did not "introduce [ ] affidavits or any other evidence establishing what they would have said"); *Ashimi*, 932 F.3d at 650. Petitioner, therefore, is not entitled to relief with respect to this assertion of ineffective assistance of trial counsel.

### 5.        Ground IV(iv)—Failing to Object to Prosecutorial Misconduct

Finally, as his fourth assertion of ineffective assistance of counsel, Petitioner contends that trial counsel failed to object to "numerous instances of prosecution misconduct." (Br. Supp. § 2254 Pet., ECF No. 6, PageID.47.) First, Petitioner faults counsel for failing to object to the "multiple instances of perjury" committed by the prosecution's witnesses. (*Id.*) Petitioner also suggests that counsel should have objected to the prosecutor's improper vouching for the witnesses' credibility. (*Id.*, PageID.48.) Finally, Petitioner faults counsel for "[f]ail[ing] to object to the prosecutor's use of the compilation video." (*Id.*, PageID.49.)

Petitioner raised these arguments in his Rule 6.502 motion, and the trial court dismissed them in its May 12, 2022 opinion and order. With respect to Petitioner's "false testimony" assertion, the trial court wrote: "It is difficult to conclude that trial court's performance was objectively unreasonable when [Petitioner] only makes a vague complaint of 'failing to object' to something that would clearly not have been a proper objection under the Michigan Rules of Evidence." (ECF No. 8-14, PageID.677.) The trial court noted further that Petitioner had advanced no argument that he "did not make to both the [Michigan] Court of Appeals and the [Michigan] Supreme Court." (*Id.*) With respect to the video issue, the trial court noted that because the court of appeals ruled that use of the video was proper, it would have been futile for counsel to object to its use by the prosecution during closing arguments. (*Id.*, PageID.678.)

Here, Petitioner fails to demonstrate that the state courts' rejection of this assertion of ineffective assistance is contrary to, or an unreasonable application of, *Strickland*. As discussed *supra*, this Court has already concluded that the prosecution did not present false testimony and did not improperly vouch for the credibility of the witnesses. Likewise, the prosecution did not commit misconduct by using the compilation video during closing arguments. It simply would have been futile for counsel to argue otherwise, and "omitting meritless arguments is neither

29

professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013); *see also Mahdi v. Bagley*, 522 F.3d 631, 638 (6th Cir. 2008) ("No prejudice flows from the failure to raise a meritless claim."). Petitioner, therefore, is not entitled to relief with respect to this assertion of ineffective assistance of trial counsel.

### 6.    Summary

In sum, Petitioner has failed to demonstrate that the state courts' rejection of any of his ineffective assistance claims was contrary to, or an unreasonable application of, *Strickland*, Petitioner, therefore, is not entitled to relief with respect to habeas ground IV.

### C.    Grounds Asserting Trial Court Error

### 1.    Ground II—Preclusion of Defense Witness

As his second ground for relief, Petitioner contends that he was denied a fair trial when "the trial court prevented him from presenting a defense when the trial court precluded the petitioner from calling a *res gestae* witness who was present at the Ros[a] Parks Circle during the fighting who heard an unidentified black male threat[en] to shoot someone." (Br. Supp. § 2254 Pet., ECF No. 6, PageID.31.)

Petitioner raised this claim on direct appeal, and the Michigan Court of Appeals rejected it, stating:

> At trial, [Petitioner] indicated that he intended to call a witness, who was present during the fights at Rosa Parks Circle, to testify that he heard an unidentified "black male" scream: "I'm going to shoot you." There were numerous individuals fighting at Rosa Parks Circle, and there is no indication that the threat was directed toward one of the teenagers involved in this case. Nevertheless, defense counsel argued that the statement was relevant because the threat suggested that someone else might have had a motive to shoot at the teenagers. The prosecutor objected to the admission of this testimony based on hearsay. Defense counsel conceded that the proposed testimony was hearsay, but defense counsel argued that it was admissible as an excited utterance, MRE 803(2), or under the catchall exception provided by MRE 804(b)(7). Citing MRE 403, the trial court excluded the evidence, explaining that any connection between the threat and the events at issue was too speculative and might confuse the jury.

Hearsay is a statement, other than the one made by the declarant while testifying at trial, that the proponent offers to prove the truth of the matter asserted. MRE 801(c). Defense counsel offered the witness' testimony to prove the truth of the matter asserted: that the unidentified declarant intended to shoot someone. Thus, the statement was inadmissible hearsay unless an exception applied. MRE 801(c); MRE 802. Even assuming that the statement was admissible under an exception to the hearsay rule, the trial court could properly bar its admission under MRE 403, if the "probative value" of the evidence was "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ."

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. In this case, [Petitioner] contends that the hearsay statement was relevant to the identity of the shooter insofar as the statement suggested that someone other than [Petitioner] had a motive to shoot at the teenagers. However, there were numerous individuals fighting at Rosa Parks Circle, and, when seeking to introduce the statement, defense counsel offered no reason to suppose that the threat by the unidentified declarant was directed at one of the teenagers involved in this case. Absent a basis to reasonably infer that the statement was directed at the teenagers in question, any assertion that the statement demonstrates that someone other than [Petitioner] wished to shoot one or all of the teenagers is mere conjecture and speculation. Because this statement's relevance rested on speculative inferences, it had little—if any— probative value. *See* McCormick on Evidence § 185 (7th ed.) ("[E]vidence lacking in substantial probative value may be condemned as 'speculative.'"). And, the trial court did not abuse its discretion by concluding that the statement's scant probative value was substantially outweighed by the risk that admission of a statement made by an unknown declarant to an unspecified individual would confuse or mislead the jury, particularly where the prosecution could not cross-examine the declarant. Under these circumstances, the trial court's decision to bar the hearsay testimony under MRE 403 fell within the range of reasonable and principled outcomes, *Yost*, 278 Mich. App. at 353, and the exclusion of this evidence did not deny [Petitioner] the right to present a defense, *Unger*, 278 Mich. App. at 250–251.

*Armstrong*, 2017 WL 6389895, at *4.

To the extent that Petitioner asserts that the state courts erred in excluding this witness's testimony under Michigan Rule of Evidence 403, he fails to state a claim upon which habeas relief may be granted. State courts are the final arbiters of state law, and the federal courts will not intervene in such matters. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). The decision of the state courts on a state law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a

31

state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67–68. Thus, the court of appeals' determination that the testimony was not admissible under the Michigan Rules of Evidence is axiomatically correct on habeas review.

Even an axiomatically correct determination that testimony was admissible or inadmissible under state law does not preclude a determination that the admission or exclusion of the evidence was so fundamentally unfair that it violated the right to due process. "Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (internal quotation marks omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). This approach affords the state courts wide latitude for ruling on evidentiary matters. *Seymour*, 224 F.3d at 552.

Further, under the AEDPA, a federal court may not grant relief if it would have decided the evidentiary question differently. A federal court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law, or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000); *see also Stewart v. Winn*, 967 F.3d 534, 538 (6th Cir. 2020) (stating

32

that, to obtain habeas relief based on an allegedly improper evidentiary ruling, a petitioner must identify "'a Supreme Court case establishing a due process right with regard to the specific kind of evidence' at issue").

In his brief supporting his § 2254 petition, Petitioner contends that the trial court's exclusion of this witness's testimony violated his right to present a defense. (Br. Supp. § 2254 Pet., ECF No. 6, PageID.31–32.) "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (quotation marks and citations omitted). A criminal defendant, however, "does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *United States v. Blackwell*, 459 F.3d 739, 753 (6th Cir. 2006) (internal alterations and quotation marks omitted). Rather, "the Constitution permits judges to exclude evidence that is repetitive, only marginally relevant or poses an undue risk of harassment, prejudice, or confusion of the issues." *Holmes*, 547 U.S. at 326–27 (internal alterations and quotation marks omitted). Thus, evidentiary rules abridge the right to a meaningful opportunity to present a defense if such rules both "infring[e] upon a weighty interest of the accused" and are "arbitrary" or "disproportionate to the purposes they are designed to serve." *United States v. Scheffer*, 523 U.S. 303, 308 (1998).

Here, Petitioner fails to meet his burden of demonstrating that the evidentiary ruling excluding this witness's testimony infringed upon his due process rights. Petitioner merely reiterates the arguments that he raised in—and that were rejected by—the Michigan Court of Appeals. Notably, Petitioner fails to identify this putative witness, let alone provide any indication that this individual was available and willing to testify the way Petitioner suggests. Moreover,

33

Petitioner has provided no evidence to counter the court of appeals' statement that there were multiple individuals fighting at the Rosa Parks Circle at the time of the incident, and he offers no evidence to suggest that the putative witness would be able to definitively testify that he overheard the unidentified black male in question direct the threat to shoot towards the teenagers with whom Petitioner had been fighting. Given the speculative nature of this putative testimony, and in light of the fact that the record demonstrates that Petitioner was able to argue that he was not the individual who shot the teenagers, the Court cannot agree with Petitioner that the trial court's evidentiary ruling denied Petitioner "a meaningful opportunity to present a complete defense." *Holmes*, 547 U.S. at 324.

### 2.    Ground V—Jury Verdict Form

As his fifth ground for relief, Petitioner avers that the jury verdict form was defective because it did not provide an option for "not guilty" as to each of the lesser-included offenses charged. (Br. Supp. § 2254 Pet., ECF No. 6, PageID.52.) According to Petitioner, this defect required reversal under *People v. Wade*, which was affirmed by the Michigan Supreme Court in *People v. Erganian*. (*Id.*)

Petitioner goes on to argue that he has a right to a properly instructed jury under the Sixth and Fourteenth Amendments. (*Id.*) He avers that "[w]ithout any requests from counsel it is the duty of the circuit judge to see to it that the case goes to the jury in a clear and intelligent manner, so that they may have a clear and correct understanding of what it is they are to decide, and he shall state to them fully the law applicable to the facts." (*Id.*, PageID.53.) Petitioner argues further that trial and appellate counsel rendered ineffective assistance by failing to object to the defective verdict form at trial and on direct appeal. (*Id.*, PageID.56.)

Petitioner raised this claim in his Rule 6.502 motion, and the trial court rejected it in its June 28, 2023 opinion and order, stating:

[Petitioner's] final argument is that the verdict form used in his trial was defective. [Petitioner] claims that his verdict form was similar to the one used in *People v. Wade*, 283 Mich. App. 462, 468; 771 N.W.2d 447 (2009), where the court found that "the verdict form was defective, requiring reversal, because it did not give the jury the opportunity to return a general verdict of not guilty." [Petitioner] argues there is no option for the jury to choose "Not Guilty" as to the lesser offense of Assault with Intent to do Great Bodily Harm Less Than Murder. [Petitioner] also claims that the failure of Mr. Stanley to raise this issue on direct appeal constitutes ineffective assistance of counsel and suffices as "good cause" to raise it in his MCR 6.500 motion. The Court will address the substance of [Petitioner's] argument.

The verdict form in this case reads as follows:

COUNT 1:

On the charge of Assault With Intent to Murder Jordan Forbes, we the jury find the defendant, Rodney Armstrong:

[check one]

_____ Not Guilty

_____ Guilty of Assault With Intent to Murder

_____ Guilty of the lesser offense of Assault With Intent To Do Great Bodily Harm Less Than Murder

COUNT 2:

On the charge of Assault With Intent to Murder Jamond Means, we the jury find the defendant, Rodney Armstrong:

[check one]

_____ Not Guilty

_____ Guilty of Assault With Intent to Murder

_____ Guilty of the lesser offense of Assault With Intent To Do Great Bodily Harm Less Than Murder

COUNT 3:

On the charge of Possession of a Firearm at the Time of Commission or Attempted Commission of a Felony, we the jury find the defendant, Rodney Armstrong:

[check one]

_____ Not Guilty

_____ Guilty

COUNT 4:

On the charge of Possession of a Firearm by a Felon, we the jury find the defendant, Rodney Armstrong:

[check one]

_____ Not Guilty

_____ Guilty

When providing the jury instructions, the Court stated:

> I prepared a verdict form listing the possible verdicts, and here it is. It consists of two pages, and it lists each of the four counts.
>
> The foreperson of the jury will report your verdict in the following manner:
>
> On Count 1 of the charge of assault with intent to murder Jordan Forbes, we, the jury, find the defendant, Rodney Armstrong—and you check one line and one line only reflecting your unanimous decision: not guilty, guilty of assault with intent to murder, or guilty of the lesser offense of assault with intent to do great bodily harm less than murder.
>
> Count 2 is just like Count 1, except that the victim alleged here is Jamond Means. You must make that separate analysis and separate unanimous decision.
>
> Count 3, on the second page, speaks of possession of a firearm at the time of the commission or attempted commission of a felony, and we, the jury, find the defendant, Rodney Armstrong—then you report either of two unanimous verdicts; not guilty or guilty.
>
> And Count 4 deals with the charge of possession of a firearm by a felon; we, the jury, find the defendant, Rodney Armstrong,--and again, you report your separate, independent, and unanimous verdict of not guilty or guilty.

Defense did not object to the instructions.

By contrast, the verdict form in *Wade* read as follows:

POSSIBLE VERDICTS

YOU MAY RETURN ONLY ONE VERDICT FOR EACH COUNT

COUNT 1-HOMICIDE-MURDER FIRST DEGREE-PREMEDITATED (EDWARD BROWDER, JR)

___ NOT GUILTY

___ GUILTY

OR

__ GUILTY OF THE LESSER OFFENSE OF-HOMICIDE-MURDER SECOND DEGREE (EDWARD BROWDER, JR.)

OR

__ GUILTY OF THE LESSER OFFENSE OF-INVOLUNTARY MANSLAUGHTER-FIREARM INTENTIONALLY AIMED (EDWARD BROWDER, JR.)

COUNT 2-WEAPONS-FELONY FIREARM

__ GUILTY

__ NOT GUILTY

In *Wade*, the court found that the verdict form's use of "or" in between the lesser offenses was potentially confusing about what verdict could be returned. *See* 283 Mich. App. at 468. In this case, however, the "not guilty" option was not limited solely to the original charged offense like the form used in *Wade*. Rather, the jury was given three options and told to select only one for each crime. Thus, contrary to *Wade*, the verdict form in this case gave the jury the option of finding [Petitioner] generally not guilty of each offense. [Petitioner] has not demonstrated plain error related to the jury verdict form, and therefore, is not entitled to relief under this claim.

(ECF No. 8-18, PageID.759–761.)

To obtain habeas relief based upon an allegedly improper jury instruction or verdict form, a petitioner must show that the instructions or form, taken as a whole, were "so infirm that they rendered the entire trial fundamentally unfair." *Doan v. Carter*, 548 F.3d 449, 455 (6th Cir. 2008) (quoting *Austin v. Bell*, 126 F.3d 843, 846–47 (6th Cir. 1997)). Here, Petitioner fails to make this showing. As set forth *supra*, the trial court's jury instructions, as well as the verdict form, clearly indicated that for each count, the jury could mark only one verdict. Moreover, the jury instructions

and the verdict form specified that for Counts One and Two, the jury could return one of three

verdicts—not guilty, guilty of assault with intent to murder, or guilty of the lesser-included offense

of assault with intent to do great bodily harm less than murder. The Sixth Circuit has affirmed the

denial of federal habeas relief in substantially similar circumstances. *See Meridy v. Ludwick*, No.

17-2006, 2018 WL 4191337, at *3 (6th Cir. May 21, 2018) (concluding that the petitioner's due

process rights were not violated because the jury verdict form gave the jury the option of returning

a general not guilty verdict, as well as verdicts of first-degree premeditated murder and the lesser

offense of second-degree murder).

Because the verdict form in Petitioner's case plainly provided the jury an option to return

a general verdict of not guilty for both assault with intent to murder charges, the verdict form did

not render Petitioner's trial fundamentally unfair. Furthermore, it would have been futile for both

trial and appellate counsel to challenge the jury verdict form on that basis. *See Coley*, 706 F.3d at

752; *Mahdi*, 522 F.3d at 638. Petitioner, therefore, is not entitled to relief with respect to habeas

ground V.

### 3. Ground VI—Denial of Request for New Trial

As his sixth and final ground for relief, Petitioner contends that the trial court erred by

denying his request for a new trial "based in part on *res gestae* witness[es] Martin Broyles and

Shane Toris and their proffered sworn statement in support when the testimony is newly

discovered, not merely cumulative, could not have been reasonably produced at trial[,] and makes

a different result probable on retrial." (Br. Supp. § 2254 Pet., ECF No. 6, PageID.57.)

Petitioner raised this claim in his Rule 6.502 motion, and the trial court rejected it, noting

that Broyles "did not actually claim to have observed the shooting," but that Broyles "state[d] in

his affidavit that he had a conversation years after the shooting by the alleged 'real shooter.'" (ECF

No. 8-18, PageID.759.) The trial court concluded that any such testimony by Broyles would

constitute impermissible hearsay and, therefore, would not have made "a different result probable on retrial." (*Id.*)

To the extent Petitioner is attempting to assert a claim of actual innocence premised upon newly discovered evidence, he fails to state a cognizable federal claim. The Supreme Court has stated: "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). But the *Herrera* Court did not close the door completely, stating in dicta that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim." *Id.* at 417. Thus, even without the occurrence of any independent constitutional violation during the state criminal proceeding, federal habeas relief might be warranted for "truly persuasive demonstration of actual innocence," provided: (1) the habeas petition seeks relief in a capital case, in which case such a demonstration of actual innocence "would render the execution of a defendant unconstitutional"; and (2) there is "no state avenue open to process such a claim." *Id.* The Supreme Court emphasized that "the threshold showing for such an assumed right would necessarily be extraordinarily high." *Id.*; *see also House v. Bell*, 547 U.S. 518, 555 (2006) ("In *Herrera*, however, the Court described the threshold for any hypothetical freestanding innocence claim as 'extraordinarily high.'"); *Cress v. Palmer*, 484 F.3d 844, 854–55 (6th Cir. 2007).

Two years after *Herrera*, the Supreme Court held that a claim of actual innocence can be raised "to avoid a procedural bar to the consideration of the merits of [the petitioner's] constitutional claims." *Schlup v. Delo*, 513 U.S. 298, 326–27 (1995). "[I]n an extraordinary case,

where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). In *Schlup*, the Supreme Court held that a credible showing of actual innocence was sufficient to enable a court to reach the merits of an otherwise procedurally barred habeas petition. *Schlup*, 513 U.S. at 317. The actual innocence claim in *Schlup* is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Id.* at 315 (citing *Herrera*, 506 U.S. at 404). Thus, the Supreme Court distinguished between a procedural innocence claim, which can permit a petitioner to overcome procedural obstacles that would otherwise preclude review of underlying constitutional claims, and a substantive or "free-standing" claim of innocence discussed in *Herrera*.

This Court may grant habeas corpus relief only when the state court has violated or unreasonably applied a clearly established holding of the Supreme Court. *See* 28 U.S.C. § 2254(d); *Williams*, 529 U.S. at 412. The Sixth Circuit has acknowledged that the actual innocence "equitable-exception [to the AEDPA statute of limitations] doctrine is not a freestanding substantive claim for habeas relief. The Supreme Court has not decided whether actual innocence is a substantive ground for relief." *Hubbard v. Rewerts*, 98 F.4th 736, 742 (6th Cir. 2024); *see also Smith v. Nagy*, 962 F.3d 192, 206 (6th Cir. 2020) (citing *Schlup* and *Herrera* for the proposition that freestanding claims of actual innocence are not cognizable on habeas corpus review); *Cress*, 484 F.3d at 854 (citing cases for the same proposition). Accordingly, in the absence of clearly established Supreme Court precedent establishing a freestanding claim of actual innocence, Petitioner's claim is without merit. Even if Petitioner could invoke this exception and obtain habeas relief on his freestanding innocence claim, he would have to meet both of the requirements

40

set forth above and then overcome the "extraordinarily high" threshold. Petitioner fails the first requirement. This is not a capital case, and, thus, the concern about the unconstitutionality of executing a defendant who has shown persuasive evidence of actual innocence is not implicated. *See Herrera*, 506 U.S. at 417 ("We first point out the obvious—that this is not, in fact, a capital case."). Accordingly, for the reasons set forth above, Petitioner is not entitled to relief with respect to habeas ground VI.

## IV.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claim. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's denial of Petitioner's claim was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## **<u>Conclusion</u>**

The Court will enter a Judgment denying the petition, as well as an Order denying a certificate of appealability.

Dated:    <u>    July 9, 2025    </u>            <u>  /s/ Jane M. Beckering          </u>
                                            Jane M. Beckering
                                            United States District Judge